## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| OLUWASEYI D. KAYODE, §<br>Plaintiff, §<br> §<br>VS. §<br> §<br> §<br>Harris County, Houston Texas; TED HEAP - §<br>Constable, Harris County Constable Precinct 5; §<br>COURTNEY REYES - a Harris County Constable §<br>Precinct 5 Police Officer with badge number §<br>C50714. MICHAEL AARON FLORES - a Harris §<br>County Constable Precinct 5 Police Officer with §<br>badge number C50674, DAVID ALANIZ - a Harris §<br>County Constable Precinct 5 Police Officer with §<br>badge number C50006; PHYLLIS D. HILLMAN - a §<br>Harris County Constable Precinct 5 Police Officer §<br>with badge number C50118; B.D. MCGUIRE - a §<br>Harris County Constable Precinct 5 Police Officer §<br>with badge number C50311; and DAISY RAMIREZ- §<br>GOMEZ - a Harris County Constable Precinct 5 §<br>Police Officer with badge number C50737 § | CIVIL ACTION NO._____<br><br>**COMPLAINT FOR DAMAGES**<br><br>JURY TRIAL REQUESTED<br><br><br>**United States Courts<br>Southern District of Texas<br>FILED**<br><br>**MAR 16 2023**<br><br>Nathan Ochsner, Clerk of Court |

## PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

COMES NOW, Plaintiff OLUWASEYI KAYODE (hereinafter "Plaintiff") complaining of Defendants TED HEAP in his Official Capacity, COURTNEY REYES, MICHAEL AARON FLORES, DAVID ALANIZ, PHYLLIS D. HILLMAN, B.D. MCGUIRE, DAISY RAMIREZ-GOMEZ, individually, and in their Official Capacity, and HARRIS COUNTY (collectively defendants), pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

Plaintiff herein complies with the pleading requirements of FRCP Rule 8(a)(2) and the requirements of Ashcroft v. Iqbal, 556 U.S. 129 S. Ct. 1937, 1949 (2009) that "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

1

## I.    INTRODUCTION

This is an action for monetary damages brought pursuant to 42 U.S.C. §§1983 and 1988, and the

Fourth and Fourteenth Amendments to the United States Constitution against Harris County

Precinct 5 Constable Ted Heap, Deputies Reyes, Alaniz, Flores, Hillman, McGuire, Ramirez-

Gomez and Harris County. This case arises from unlawful arrest and malicious prosecution of

Plaintiff, a black man. Plaintiff is a U.S Citizen, a resident of Harris County, and a landlord in

Harris County, Texas. The plaintiff owns two rental properties in Harris County with furnished

rooms rented by different unrelated tenants, separately, and individually such that the tenants share

a house.

Plaintiff called 911 to report to an assault by a female tenant Ms. Anchi. Ms. Anchi was renting a

bedroom at the Plaintiff's rental property and had assaulted Plaintiff during an altercation. Deputies

from Harris County Constable Precinct 5 were dispatched to the house to investigate the reported

incident. However, at some point the Deputies initiated an argument with the Plaintiff about real

property laws and Plaintiff's rights regarding practices at the property. Plaintiff's strongly but

respectfully disagreed with the Deputies on their arguments on his rights as a landlord and their

assertions regarding tenants' rights. As the Deputies continue to assert their knowledge of these

laws, Plaintiff stated that police officers are not attorneys and should not presume to have

undisputable knowledge of all the related laws and should be aware there are gray areas of this civil

matter such that they such do not assume their assertions are undisputable. Plaintiff noted that the

officers were visibly angry because he refused to accept their arguments on landlords' rights.

Deputies then proceeded to investigating the false allegations of the female tenant regarding the

presence of hidden cameras in the house. After almost 2 hours of searching the whole house, while

detaining the Plaintiff outside, the Deputies found no such devices anywhere. The officers then

maliciously concluded the visit with arrest of the Plaintiff with the criminal charge of making a false

assault report. Deputies recklessly disregarded clear cellphone video and audio evidence presented by the Plaintiff showing the agitated and belligerent female tenant confronting, rapidly approaching, and then reaching up to Plaintiffs face with her hands on at least two occasions even as she was yelling angrily at the Plaintiff. The cellphone audio also clearly recorded Plaintiff telling the tenant in real-time that she her fingers poked his face on at least two occasions when she approached him.

Despite the preponderance of this and other corroborating evidence (text messages showing history of erratic behavior, complaints from other tenants and false reports to law enforcement about trash on her vehicle) viewed by the Deputies, they maliciously concluded that the Plaintiff lied when he called 911 to report the assault.

Plaintiff was arrested, placed in handcuffs, placed in the back of a squad patrol car and dropped off in Harris County jail where he remained overnight without any contact from family for over 16 hours. Plaintiff is a law-abiding Citizen that has never been charged with any prior offense or misdemeanor. Plaintiff was deeply traumatized and suffered serious mental anguish from the experience of been stripped searched in jail, fingerprinted like a criminal and sitting in jail for doing the right thing by not retaliating to the assault, calmly walking away from the agitated tenant and calling for law enforcement intervention.

Ultimately, the case against the Plaintiff was dismissed two weeks later **03/16/2022** when the Court determined that the prosecution did not provide any probable cause for the arrest of Plaintiff. The case was therefore ordered dismissed and terminated in Plaintiffs favor.

The responding officers intentionally and maliciously violated the rights of the Plaintiff, handcuffed him, humiliated him in front of the tenants, placed him into the back of a patrol car, and separated him from his family to spend twelve hours in jail—all for retaliation and other malicious motives because he asserted his constitutional rights. Plaintiff now seeks damages for the violations of his

3

rights under the First and Fourth Amendments to the United States Constitution, the Texas Constitution, and state law.

## II.    NATURE OF THE ACTION

1.  This is an action brought by the Plaintiff against the Defendants, for their violation of his constitutional rights under the U.S. Constitution, 42 U.S.C. § 1983 with a false and malicious arrest and malicious prosecution.

## III.    STATUE OF LIMITATIONS

2.  The limitations period for a claim for malicious prosecution is one year after the day that the cause of action accrues. Tex. Civ. Prac. & Rem. Code Ann. 16.002 (a) (West 2002); Torres v. GSC Enterprises, Inc., 242 S.W.3d 553, 561 (Tex. App.- El Paso 2007, no pet.).

3.  A cause of action for malicious criminal prosecution accrues when the criminal prosecution ends. Id. For purposes of the statute of limitations, a malicious prosecution claim accrues upon termination of the criminal proceedings brought against and not when the prosecution finally decides that it no longer desires to pursue the matter.  Leal v. American National Ins. Co., 928 S.W.2d 592, 597 (Tex. App.-- Corpus Christi 1996, writ denied).

4.  Based on the termination of the malicious prosecution of Plaintiff of 03/16/2022, this is the date of accrual with the statute of limitation set after 03/16/2023. Therefore, this suit is brought in timely manner of not more than one year of the date of accrual.

## IV.    PARTIES

5.  Plaintiff **Oluwaseyi Kayode** is a citizen of the United States, a Chemical Engineer with active professional career, and a resident of **Harris County**, Texas.

6.  Defendant **TED HEAP** is the Constable Harris County Precinct 5, with supervisory authority over all the officers and operations of the Precinct's deputies including responsibilities for training, recruiting, and managing all the deputies. He is sued in his official capacity. This Defendant may be personally served at his place of business: The Office of Constable Ted Heap Harris County Precinct 5, 17423 Katy Fwy, Houston, TX 77094 or wherever he may be found.

7. Defendant COURTNEY REYES is being sued individually and in her official capacity as a police officer with badge number C50714.

8. Defendant MICHAEL AARON FLORES is being sued individually and in his official capacity as a police officer with badge number C50674.

9. Defendant DAVID ALANIZ is being sued individually and in his official capacity as a police officer with badge number C50006.

10. Defendant PHYLLIS D. HILLMAN is being sued individually and in her official capacity as a police officer with badge number C50118.

11. Defendant B.D. MCGUIRE (first name currently unknown) is being sued individually and in their official capacity as a police officer with badge number C50311. Plaintiff intends to amend the complaint upon learning defendant's first name.

12. Defendant DAISY RAMIREZ-GOMEZ is being sued individually and in her official capacity as a police officer with badge number C50737.

13. Defendants REYES COURTNEY, DAVID ALANIZ, MICHAEL AARON FLORES, PHYLLIS D. HILLMAN, B.D. MCGUIRE. and DAISY RAMIREZ-GOMEZ are police officers with Harris County Constable Precinct 5. At all relevant times, they were acting under color of law within the course and scope of their duties as Harris County Precinct 5 Police Officers, and as agents and employees of HARRIS COUNTY, Texas. These Defendants may be personally served at their place of business: The Office of Constable Ted Heap Harris County Precinct 5, 17423 Katy Fwy, Houston, TX 77094

14. Defendant Harris County is a county in the State of Texas existing pursuant to the laws of the state of Texas. Harris County has established and maintains the Harris County Precinct 5 Constable office as a constituent department or law enforcement agency. This Defendant may be personally served by serving Harris County Judge Lina Hidalgo, 1001 Preston, Suite 911, Houston, Texas 77002.

6

## V.    JURISDICTION AND VENUE

15. This Court possesses jurisdiction over this action because Plaintiff asserts a federal claim against Defendants based on a violation of civil rights pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the United States Constitution. The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. §1331.

16. This Court has supplemental jurisdiction over Plaintiff's state law claims, under 28 U.S.C. §1367, because the claims are so related to the claims over which this Court has original jurisdiction that they are part of the same case or controversy.

17. Venue is appropriate in the United States District Court for the Southern District of Texas, Houston Division, under 28 U.S.C. §1391(b), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## VI.    STATEMENT OF FACTS

18. Plaintiff alleges that he owns two rental properties in Harris County with furnished rooms rented individually and separately in a shared living situation like an Airbnb.

19. Plaintiff alleges that he furnished the houses, all the bedrooms in the house, and furnished the common areas including the living room, kitchen, laundry and provided all utilities (water, electricity, internet, gas, lawn services) and regular maid services to his tenants.

20. Plaintiff alleges that he rented out the rooms with provision in the lease agreement that the landlord and his agents may enter the common areas as needed and at reasonable times to inspect, provide services or maintenance or improve the property without notice to tenants.

21. Plaintiff also included provision in the lease that the landlord may install monitoring devices at the property's entrances and the common areas only. This is for the general safety of tenants, ensuring proper use, proper access, protection of landlord's property in the common areas and to ensure compliance with house rules such as cleanliness of the kitchen area.

7

22. Plaintiff alleges that it was clear to all tenants that no cameras or such devices were installed in private areas like bedrooms, bathrooms, or any other non-public spaces.

23. Plaintiff alleges that Ms. Tabitha Amana Anchi, a female, became a tenant at one of his rental properties around December 5th, 2021. Ms. Anchi was renting the Master Bedroom only and shared the rest of the house (common areas) including the living room, kitchen, laundry with other unrelated tenants.

24. Plaintiff alleges that shortly after Ms. Anchi moved in, several complaints were filed by other tenants of loud noise from her room disturbing their quiet enjoyment of the house by others.

25. Plaintiff alleges that on February 8th, 2022 and on February 15th, following complaints from other tenants of loud TV from Ms. Anchi's room disturbing them from sleeping late at night, Plaintiff sent a text message to Ms. Anchi to draw her attention to the noise level and seek her cooperation to keep the house peaceful. Screenshots of the text messages are provided below.

26. Plaintiff alleges that on February 12th, 2020, following report and observation of food that has

Thanks 

Tabitha Amana Anchi (Mobile) · Feb 6, 4:47 PM

I understand you may have loud music / TV on at the time of the day. If this is correct, please stop this right away. The expectation is for consideration for others quiet enjoyment. Thank you for your understanding and anticipated cooperation.

Feb 8, 11:06 PM

I just got complaint by other tenants about the volume of your TV. I want you to enjoy your TV but please do so at volume that is considerate of other guests. I have first hand experience of your TV volume when I'm over at the house. It is quite loud. So please reduce the volume or consider using a headset. The only way living together here works is if everyone makes some sacrifices and considers others.

Feb 15, 8:39 PM

been left in the kitchen on a stove for several days, a text message was sent to Ms. Anchi directing her to clean up what appeared to be her food to free up the stove for other tenants.

27. Plaintiff alleges that Ms. Anchi responded to the text message with insults to the landlord and assertion that she doesn't complain about noise from other tenants so other tenant should tolerate the noise from her TV. She stated the landlord should not bother her about complaints and other lease violations because she supposedly paid the most rent.

8

28. Plaintiff alleges that this response is a window into the state of mind and personality of Ms.

Anchi as a rude and unreasonable tenant that would not follow the terms of her lease regarding

noise and cleanliness. Screenshot of the text messages exchange is provided below.

I'm not sure if the pot on the stove with some food (looks like meat) belongs to you. If this is yours, please remove and clean asap. Thanks

Feb 12, 6:15 PM

You sound so rude to me , I don't know if it is with me or I did something wrong to you, I will only take all this messages to a certain level, I am the one paying more than anyone in this house, I hear all the noise from everyone doing what so ever, I did ask all your tenants if that is the way you talk to

Ms. Anchi responds to a polite text message about expectation to remove pots and cookware from stove after use with insults and rantings about been targeted.

Plaintiff only contacted Ms. Anchi about making sure violations are corrected promptly when such come to knowledge of Plaintiff.

29. Plaintiff alleges that on February 14th, 2022, Plaintiff and his young children stopped by the

property and helped moved the two trash bins and other overflowing trash to the curbside of

the property for pick up the next day by the garbage removal service. A vehicle, later

determined to belong to Ms. Anchi, was already parked on the street. As seen in the pictures

below, the trash bins were left in front of the vehicle with care taken to not block the driveway

and with no trash on the vehicle. Overflowing trash that could not fit in the bins are on the

lawn, not on the vehicle. In the pictures, trash bins for neighbors can also be seen on the

curbside. The doors to the vehicle are not obstructed by any trash and there is plenty of

unobstructed space in the rear for the vehicle to backup and operate normally.



30. Plaintiff alleges that around 8:30 am on February 15th, 2022, Ms. Anchi saw these trash bins and became very furious. She immediately placed a phone call to the Plaintiff and started yelling at and insulting him with allegations that trash was placed on her vehicle. She claimed there were scratches and damage to her vehicle. Around this time, several tenants sent text messages to Plaintiff complaining about her disturbing behavior with reports of screaming loudly, banging of doors violently and knocking on their doors to get attention. She later called 911 to report that the Plaintiff maliciously put trash on her vehicle and wanted a police report against the Plaintiff. Defendant MICHAEL AARON FLORES responded to the service call and spoke with Plaintiff on the phone regarding the allegations. Defendant FLORES noted in the event report, inserted below, that "trash can was brought out with other loose bags in front of reps vehicle that is parked on the curb in front of the house..... where the trash is usually picked up...no trash on rep`s vehicle. only in front on the curb"

### Event Report

| | | | | |
|---|---|---|---|---|
| Event ID: 2022-0513878 | Call Ref #: 680 | | Date/Time Received: 02/16/22 08:36:47 | |

| Rpt #: | Prime 5U62 | Services Involved | | | | |
|---|---|---|---|---|---|---|
| Call Source: W911 | Unit: FLORES, MICHAEL AARON | LAW | | | | |

| Location: | | | | |
|---|---|---|---|---|
| X-ST: DRYWOOD LN | | Jur: CAD | Service: LAW | Agency: HCC5 |
| ASHLEY TERRACE LN | | St/Beat: 5055 | District: D | RA: |
| Business: | | Phone: | | GP: 5455 |

ALT: 0 DIST: 6.5 ft

| Nature: MEET THE CITIZEN | Alarm Lvl: 1 | Priority: 3 | Medical Priority: |
|---|---|---|---|

| Reclassified Nature: | | | |
|---|---|---|---|

| Caller: TABITHA | | Alarm: |
|---|---|---|
| Addr: | Phone: (202) 491-5577 | Alarm Type: |

| Vehicle #: | St: | Report Only: No | Race: | Sex: | Age: |
|---|---|---|---|---|---|

| Call Taker CKINTZ | Console: PSHP0036 | | |
|---|---|---|---|

| Geo-Verified Addr.: Yes | Nature Summary Code: | Disposition: ADV | Close Comments: |
|---|---|---|---|

Notes:  trash can was brought out with other loose bags in front of reps vehicle that is parked on the curb in front of the house..... where the trash is usually picked up...no trash on rep's vehicle. only in front on the curb. [02/16/22 09:01:01 Unit:5U62] CREPT AT LOC, POSS GROUPHOME . SAYS SHE STAYS WITH A LOT OF DIFF PEOPLE AT LOC, ONE OF THE MLS TOOK TRASH AND PUT IT ALL OVER HERE CAR, WANTS A REPORT/ NEGATIVE TO COVID9 QUESTIONS. ML SUSP IS NOT AT LOC AT THIS TIME [2/16/22 08:39:35 CKINTZ]

31. Plaintiff alleges that with no trash or scratches on her vehicle, there was no action against the tenant for filing a false report regarding the allegations that trash was on her vehicle and her malicious attempt to get a police report and action against Plaintiff on false premises.

32. Plaintiff alleges the following this incident and continuation of violations of the terms of the lease with belligerent behavior and disturbances, Plaintiff decided to terminate the lease and issued a 3 days' notice to vacate to Ms. Anchi on 02/17/2022. The first notice was left under her door when she did not respond to knocks on her door.

33. Plaintiff alleges that on 02/18/2022, another attempt was made to hand deliver a 2nd notice to vacate to Ms. Anchi directly and record the event as proof of service. After knocking on her door and stepping back into the living room. Ms. Anchi came out of her room and disputed seeing the 1st notice to vacate that was left under her door. She then refused to accept the 2nd notice to vacate the Plaintiff intended to hand deliver. She quickly got very angry and then assaulted the Plaintiff by pushing and shoving him violently as she walked past him.

34. Plaintiff alleges that the incident from the knock on her door and the assault were captured on the Plaintiff cellphone. Plaintiff did not retaliate but instead walked away from her called 911 to report the assault.

35. Plaintiff alleges that Defendant MICHAEL AARON FLORES and another officer M.H. BUENROSTRO responded to the service call. Plaintiff showed the video of the incident to the officers and explained what happened.

36. Plaintiff alleges that the officers later asked Plaintiff if he wanted to press charges against the tenant for the assault and whether Plaintiff felt any pain from the assault. Plaintiff stated he did not want to press charges and he did not feel any meaningful pain. Plaintiff further stated that he just wanted the tenant warned against put her hands on people, nothing more.

37. Plaintiff alleges that the officers handed the notice to vacate to the tenant and left without any further action.

38. Plaintiff alleges that he did not have any encounter with the tenant following this last incident and the tenant refused to move out as demanded. As a result, on February 28th, 2022, Plaintiff filed a petition for eviction with the Harris County Justice of the Peace against the tenant.

11

39. Plaintiff submits that in over 5 years as a landlord with encounter with several tenants of all sorts of backgrounds, sex and age renting room in similar fashion, Ms. Anchi is the first and only tenant he has ever evicted or had cause to call law enforcement for assault.

40. Plaintiff alleges that around 10:30 am on March 2nd, 2022, Plaintiff was over at house, in the common area, to address certain maintenance requirements. Plaintiff was in the living room, a common area, when an altercation erupted with Ms. Anchi over lack of adequate heat in her room and lack of internet access.

41. Plaintiff disputed Ms. Anchi's claims that the house or her room was cold or that her room was targeted as the whole house is centrally heated and cooled, no single room can be isolated, and no other tenant was complaining of lack of heat. As the dispute went on, Plaintiff was recording the encounter on his cellphone while the tenant was also doing the same on her cellphone.

42. Plaintiff alleges that at some point, Ms. Anchi got extremely angry and suddenly, from at least 6 feet away, came angrily face to face with the Plaintiff to yell in Plaintiff's face while also wagging her fingers in Plaintiff's face. Ms. Anchi angrily continued to wag her fingers in Plaintiffs face, recklessly and repeatedly spitting on and poking Plaintiff in the face.

43. Plaintiff alleges that as Ms. Anchi was wagging her finger angrily, yelling threats, cursing, and recklessly spitting in Plaintiff's face. Plaintiff can be heard in real-time, repeatedly complaining to Ms. Anchi that her fingers were poking him in the face. Plaintiff then walked away from her into the kitchen area and called 911 to report the incident.

44. Plaintiff alleges that Ms. Anchi also called 911 after she saw the Plaintiff had called 911.

45. Plaintiff alleges that he was outside on the driveway when Defendant COURTNEY REYES arrived at the house. They recognized each other having met before in early December 2021 when Defendants COURTNEY REYES and PHYLISS D. HILLMAN responded to a service call at the same house - this was also the first time ever deputies were called to the house.

12

46. Plaintiff alleges that Defendant COURTNEY REYES stated right away "This is the last time I am coming to this house". Evidence of this statement should be on her body worn camera. Plaintiff responded by stating that he was sorry and would ensure that they are not called to the house again by finding better tenants.

47. Plaintiff alleges that Defendants Reyes, Hillman and Alaniz arrived at the house at about the same time. Defendant Reyes, Hillman and Alaniz are shown along with Plaintiff and Ms. Anchi in the pictures below from the doorbell camera.

48. Plaintiff alleges that Defendant Reyes and Alaniz immediately assumed the role of leading the investigation with Defendant Hillman assisting.



49. Plaintiff alleges that other Defendants from the Harris County Constable Precinct 5 office later arrived at the scene at different times to assist with the investigation.

50. Plaintiff alleges that he summarized what occurred to Defendants Reyes and Hillman and showed them the cellphone videos of the two assaults and several text messages showing: numerous complaints from other tenants about Ms. Anchi's disturbances and Plaintiffs repeated polite reminders to Ms. Anchi to stop violating the terms of the lease and evidence of disregard for these warnings and continuation of violations and insults to Plaintiff.

51. Plaintiff alleges that he was then asked to remain outside and away from Ms. Anchi while the officers questioned her. Plaintiff complied and moved about 25 feet away outside.

52. Plaintiff alleges that Ms. Anchi was sobbing and casted herself to Defendant Reyes, Hillman and Alaniz as a victim of sexual harassment and intimidation by an overbearing landlord. Ms. Anchi further alleged that Plaintiff has been spying on her with hidden cameras or other such devices installed in her room. Ms. Anchi stated clearly to the officers that her suspicion of hidden cameras is based on the fact that Plaintiff had texted her a number of times to reduce noise of her TV when Plaintiff does not live at the house, so it follows that Plaintiff must have relied on hidden cameras to know whatever she was doing, including watching TV. This is obviously without regard for the fact that other tenants at the house may have complained to the Plaintiff about the TV noise from her room downstairs.

53. Plaintiff alleges that following Ms. Anchi statement to the officers that Plaintiff does not live at the house. The officers then asked Ms. Anchi how Plaintiff got into the property. Ms. Anchi stated that as landlord, Plaintiff comes into the property without been let in by anyone.

54. Plaintiff alleges that Defendants Reyes and Alaniz then stated to Ms. Anchi that Plaintiff, even a landlord has no right to come into the property without permission of the tenants.

55. Plaintiff alleges that Defendants Reyes and Alaniz then turned to Plaintiff and questioned whether he lived at the property and if not, if any of the tenants opened the front door and allowed him to come into the property that morning.

56. Plaintiff responded that he came into the property that morning with his access code to the front door. A dispute then began with the officers dismissing Plaintiff explanations and insisting that even as landlord in the scenario, Plaintiff has no right to access the property.

57. Plaintiff clarified to officers that each tenant separately and individually rented only their respective bedroom as private areas and shared the rest of the house as common areas with other unrelated tenants. Plaintiff clarified that the front door leads to the common areas and not to a tenant's room which is a private area. Plaintiff clarified that a written lease was executed by landlord and each tenant, separately, with clear clause that the landlord and his

14

agents may enter the common areas like backyard, living room, kitchen without consent of the tenants to provide regular services like cleaning by maids, showing vacant rooms to prospective tenants, inspection, maintenance etc. Plaintiff stated to the officers that this is consistent with the law that allows a landlord to enter common areas of a rental property.

58. Plaintiff alleges that he further clarified to Defendants Reyes, Hillman, and Alaniz that all the tenants are unrelated, did not jointly rent the whole house, signed separate lease agreements with clear provision allowing the landlord to enter the house, moved into the house at different times and with different terms: rent, duration of stay, start and end of stay.

59. Plaintiff alleges that Defendants Reyes, Hillman, and Alaniz firmly insisted Plaintiff has no right to enter the property without permission of tenants. Plaintiff clarified that the officers' position is applicable to cases where a tenant(s) rents a whole house or apartment, but such basis is not applicable to the current scenario where the tenants are renting rooms.

60. Plaintiff alleges that even with his calm and polite attempt to clarify how the scenario is different the officers remained adamant and were showing clear anger in demeanor and statements at the Plaintiff for his refusal to shut up and accept their submissions.

61. Plaintiff alleges that at some point in the ongoing argument, he said that law enforcement officers are not trained real estate attorneys and must accept that they have only limited knowledge and should not assume to know everything about civil matters or real estate. Plaintiff also said he is confident is position as a well-educated and informed landlord. Plaintiff observed these three officers getting very angry with one of them saying angrily to Plaintiff "watch yourself, I am not one of your tenants". Evidence of this is on their body worn camera. Plaintiff then realized this was getting out of hand decided to remain quiet.

62. Plaintiff alleges the officers then detained Plaintiff outside for over 1 hour while they investigated the allegations that there are hidden cameras inside the house. They went into the room of Ms. Anchi and were later seen approaching other tenants to search their rooms as

well. Plaintiff later gathered from tenants that the entire house was searched by multiple officers for hidden cameras and any such devices, but none was found.

63. Plaintiff alleges that Defendant Reyes then approached Ms. Anchi and asked her if the Plaintiff had put his hands on her. Ms. Anchi responded that the Plaintiff did not touch her.

64. Plaintiff alleges that considering Ms. Anchi never initiated a call for service for assault or hinted there was any assault by Plaintiff, Defendant Reyes was maliciously fishing for a probable cause to arrest Plaintiff based on mere allegation.

65. Plaintiff alleges that at some point, Defendants Reyes and Alaniz suddenly approached Plaintiff and bizarrely repeatedly demanded that Plaintiff confess that he was lying when he stated he was assaulted. Plaintiff maintained firmly that Ms. Anchi's hands poked his face when she clearly angrily motioned towards him with her hands reaching up to his face. This was clearly on video. Plaintiff also added that saliva from Ms. Anchi yelling in his face was felt when she decided to yell in his face while also reaching in with her hands.

66. Plaintiff alleges that Defendants Reyes and Hill then demanded that Plaintiff show evidence that Ms. Anchi's fingers poked his face from the cellphone videos. Plaintiff then checked if the WYZE camera in the kitchen may have captured the event since the living room is adjacent to the kitchen. However, the assault was not captured by this camera because the view of the camera was obstructed by a wall blocking Ms. Anchi and a pillar blocking the Plaintiff. From the view of the kitchen camera, Ms. Anchi was initially standing behind a wall while Plaintiff was behind a pillar in the kitchen. As such the only evidence available are the cellphone videos recorded by Plaintiff and Ms. Anchi.

67. Plaintiff alleges that he attempted explaining to Defendant Reyes and Hill that their demand for Plaintiff to show video evidence of Ms. Anchi finger poking his face from his cellphone recording is illogical since the lens of the camera was pointed away from Plaintiff hence the camera can only show the approach by Ms. Anchi and her hands going up.

16

68. Plaintiff alleges that Defendants Reyes and Hill got together with both acknowledging to each other seeing video of Ms. Anchi's her hands reaching up to Plaintiff's face.

69. Plaintiff alleges that below Defendant Reyes was recorded on doorbell camera gesturing to Ms. Anchi that she saw cellphone video of her hands go up to Plaintiffs face and simply asked



Defendant Reyes here captured by doorbell camera gesturing with her hands raised that she had seen Ms. Anchi's hands go up to Plaintiffs face on cellphone video with Plaintiff alleging that her hands poked his face. Ms. Anchi lied saying "I didn't touch him". Defendant Reyes simply walked away and later maliciously arrested and sent Plaintiff to jail for allegedly making a false report about been assaulted.

if she had touched Plaintiff. Ms. Anchi responded that she did not touch Plaintiff and Defendant Reyes simply walked away from Ms. Anchi.

70. Plaintiff alleges that Defendants Reyes and Hill saw clear and sufficient evidence which should lead any reasonable person to conclude that Ms. Anchi's fingers probably touched the Plaintiff. Plaintiff alleges that recklessly ignoring this element of reasonableness and considering the recent history with these officers and the hostility resulting from the arguments, arresting Plaintiff for making a false report about the alleged assault is therefore borne out of other ulterior and malicious motives under the color of state law.

71. Plaintiff alleges that Defendant Reyes and Alaniz came to where Plaintiff was standing outside to tell Plaintiff that they have spoken to their legal superiors presumably the District's Attorney's office and got feedback that Plaintiff lacked the authority to come into the property without tenants permitting him. As the officer stated this, Plaintiff continue to observe an angry demeanor and hostility from the officers over this contentious matter. Plaintiff did not

17

respond or argue his rights knowing the officers were already sympathetic towards Ms. Anchi and angry at him for suggesting they are not attorneys or legal experts.

72. Plaintiff alleges that Defendant Reyes at some point gathered all the tenants and advised them to pursue legal action against the Plaintiff. Defendant Reyes and Alaniz advised the tenants that the landlord actions were practice of coming into the house, installation of cameras in the common area and so on are illegal and abusive and passed on all sorts of information and offered assistance to pursue legal actions to the tenants.

73. Plaintiff alleges that among other advice, tenants were advised by the officers that they can remove and replace the front locks, remove the doorbell camera and any other camera in the common areas of the house and also refuse Plaintiff access to the property. Tenants were then provided with phone numbers to call to start legal action against Plaintiff.

74. Plaintiff alleges that after not finding any hidden cameras at the house and therefore no probable cause to continuing investigating for such at another location, Defendant Reyes then sought and got address and other information from a tenant about the address of another rental property owned by Plaintiff.

75. Plaintiff alleges that malice and a fervent desire to take down the Plaintiff was the motivation to seek information about the other rental property owned by Plaintiff.

76. Plaintiff seeks to understand through discovery what actions action were taken by Defendant Reyes and any other defendants with the address to further Plaintiff's malicious prosecution or further other violations of his property and civil rights.

77. Plaintiff alleges that Defendants Reyes and Ramirez-Gomez then approached him and declared he was under arrest and demanded he turned around to be placed in handcuffs. Plaintiff complied by turning around. He was then handcuffed, searched with his wallet, cellphones, car keys and cash confiscated. He was then placed in the back of the squad vehicle and taken to Harris County Courthouse jail.

78. Plaintiff alleges that he asked Defendant Reyes what evidence or probable cause led to his arrest. Defendant Reyes simply said Plaintiff is a bad landlord and a troublemaker. She went on to say you are always the one starting the trouble.

79. Plaintiff alleges that Defendants Reyes, Hillman, Alaniz, Flores and others in fact conspired to arrest him maliciously because:

   a. They hated that he challenged them over property rights. Plaintiff exercise of his First Amendment rights by firmly disagreeing with their interpretations of real property laws and landlord's rights was offensive to the Defendant Reyes, Defendant Hillman and their male counterpart. The various statements made by these officers' show disregard for the Plaintiff attempts to exercise his First Amendment rights.

   b. Malice towards the Plaintiff about prior service calls to the address in a short period of time. Defendant Reyes in particular stated to Plaintiff immediately when she arrived that this was the last time she was going to respond to calls to the house.

   c. Intimidating effect on the Plaintiff to suppress any future service calls to the address.

   d. Malicious personal bias to the practices of the Plaintiff as a Landlord. Defendant Reyes stated to several tenants that the landlord was not respectful of tenant's rights to privacy and had concluded that he landlord was overbearing and oppressing Ms. Anchi – a female like herself. Defendant Reyes sought to use her policing powers to punish the landlord as revenge on behalf of Ms. Anchi who casted herself a victim of domestic abuse and sexual harassment from the Plaintiff.

   e. Malicious bias towards the male Landlord, the Plaintiff, in sympathy for the female tenant who played the victim even though clear cellphone video evidence shows she is the aggressor and a belligerent tenant who at minimum may have assaulted the Plaintiff.

19

80. Plaintiff alleges that he remained in Harris County jail for 16 hours without any contact with his family, no sleep, and with aggravated and severe back pain from sitting uncomfortably for such extended period.

81. Plaintiff alleges that he was stripped searched at the Courthouse jail, had his mug shot taken, was fingerprinted extensively to cover his palm and detained like a common criminal.

82. Plaintiff alleges that he was released from jail around 6 am the next day on a personal bond and given a notice to appear in court for trial March 10th, 2022. Plaintiff's phones were dead and he endured a lot of hardship to get back home to his family who also had suffered a lot having not heard from him for almost 24 hours. Plaintiff young children could not be picked from school the prior day by Plaintiff as was usually the case. Plaintiff could not perform other professional work as a Chemical Engineer and business responsibilities due to the detention.

83. Plaintiff alleges that he sought to get information of his arrest from Harris County Constable Precinct 5 office by filing official requests for information prior to appearance in court. However, all the requests were denied. Reasons for denial included that the investigation was ongoing, so they cannot reveal any information for an ongoing investigation, even to the Plaintiff, who in this case was the defendant in the criminal court case. However, when the case was later dismissed, requests for information such as the account of the arresting officers were still denied. The reason for denial was a bogus intent of protecting the Plaintiff by not releasing basic case information to the Plaintiff. Plaintiff was advised to direct further appeal to the State Attorney General for exceptions.

84. Plaintiff alleges that he appealed to the Office of the Attorney General of Texas to grant exception to release information regarding the case. After several months, the appeal was rejected and basic information on the case remained undercover. It became clear this is in fact a systemic denial of Plaintiff's due process clause and tactical obstruction of justice.

85. Plaintiff alleges that the practice in Texas of law enforcement withholding basic information under guise of protecting ongoing investigation or some other interest is indeed a blatant and coordinated vehicle of obstruction of justice and accountability. Plaintiff rights to due process to face his accusers and their account of event has been denied thus far by the state.

86. Plaintiff request disclosure for enforcement of Plaintiff due process rights.

87. Plaintiff alleges that Defendant TED HEAP is responsible for training the deputies. His failure to proper train and supervise the defendants directly resulted in Plaintiff arrest by misguided deputies who sought to take on the roles of legal expert and legal counsel against the Plaintiff is a wholly otherwise civil matter between a landlord and tenant. Room sharing and room rentals like Airbnb are now commonplace with unique characteristics around leasing agreements between tenants and landlords. The failure of Defendant TED HEAP to properly train the deputies continue to present dangers of violations of citizens rights as officers wrongfully insert themselves in these matters and then retaliate with false arrests or other violations of civil rights when opposed by lawful landlords.

88. Plaintiff alleges that Defendant Harris County is responsible for the actions of the District Attorneys who recklessly accepted to prosecute the Plaintiff without ensuring adherence to due process and the diligence of verifying the presence of probable cause. The failure of the District Attorney's Office to diligently examine the cause before proceeding with prosecution caused the plaintiff to suffer wrongful arrest, wrongful detention, malicious prosecution, mental and emotional anguish, and violations of several civil rights.

## VII.    CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF – 42 U.S.C. §1983

89. The allegations contained in the paragraphs above are hereby incorporated and alleged for all purposes and incorporated herein with the same force and effect as if set forth verbatim.

90. The Defendants deliberate and/or reckless acts violated the Plaintiff's clearly established rights under the United States Constitution to: (1) the right to due process by law; (2) freedom from unreasonable seizure of his person; and (3) freedom from malicious prosecution.

91. §1983. The Civil Rights Act of 1871, now codified as 42 U.S.C. §1983 as federal law provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. §1983.

92. The state action requirement for standing under 42 U.S.C. §1983 has more commonly been referred to as "color of state law", from the statute itself. Plaintiff is informed and believes and thereupon alleges that in committing said acts and/or omissions, the Defendants Reyes, Hillman, Alaniz, Flores, McGuire and Ramirez- Gomez were agents and employees of Harris County Constable Precinct 5 and were acting under color of state law.

93. Section 1983 requires that the conduct complained of must have deprived the person of some privilege or immunity secured by the Constitution or laws of the United States. Plaintiff alleges that Defendants deprived him of his Fourth Amendment rights and those rights, privileges, and immunities secured by the Fourth Amendment to the Constitution incorporated and applied to the states through the Fourteenth Amendment. Defendants violated these provisions by the following actions and/or omissions.

22

    a. by detaining Plaintiff in violation of his Fourth Amendment expectation of privacy and guarantee to security from unreasonable seizure without reasonable suspicion and/or probable cause;

    b. by maliciously prosecution of Plaintiff to retaliate for exercise of his First Amendment rights in arguing his lawful property rights and malice towards the Plaintiff in his operation of a rental house that resulted in four service calls in a three-month period.

94. The Defendants' actions and/or omissions were objectively unreasonable considering the facts, the audio, the video and the circumstance confronting them without regard to their underlying intent or motivation. Clearly, careful attention to the facts and circumstances of this particular case demonstrates the unreasonableness of the Defendants' actions.

## **SECOND CLAIM FOR RELIEF – Intentional Infliction of Emotional Distress**

95. The allegations set forth in the paragraphs above are herein incorporated by reference, the same as if fully set forth verbatim for any and all purposes of this pleading.

96. As a pendant state cause of action, at all times material and relevant herein, Defendants, by acts and/or omissions and under color of state law, intentionally and/or recklessly inflicted emotional duress upon Plaintiff, thereby he claims the tort of intentional infliction of emotional distress. Plaintiff alleges Defendants acted intentionally or recklessly when detaining and arresting him, and further alleges such conduct was extreme and outrageous. The actions of Defendants proximately caused Plaintiff to suffer severe emotional distress.

23

## VIII.   DAMAGES AND PUNITIVE DAMAGES

97. The allegations contained in the paragraphs above are hereby incorporated and alleged for all purposes and incorporated herein.

98. As a result of the foregoing unlawful and wrongful acts as described above, Plaintiff has suffered actual and consequential damages exceeding the minimum jurisdictional limits of this Court. As a direct and proximate result of Defendants' acts and omissions as heretofore alleged, Plaintiff suffered, and is seeking recovery of, general damages which include, but are not limited to, the following in both the past and the future: physical and emotional personal injury, pain and suffering, and mental anguish.

99. In addition, the Defendants committed the foregoing acts with the kind of willfulness, wantonness, fraud and/or malice for which the law allows imposition of punitive damages against Defendants. Punitive damages are designed to punish and/or deter persons such as the Defendants who engaged in egregious wrongdoing. Punitive damages may be assessed under 42 U.S.C. §1983 when the conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. **Plaintiff seeks punitive damages of at least $1 million to punish and deter such conduct by the Defendants in the future.**

## IX.   ATTORNEY FEES

100.      Plaintiff has consulted with attorneys and other legal service providers to all him to represent him, and pursuant to 42 U.S.C. §1988(b)-(c) of the Federal Civil Rights Act, he is entitled to recover for his reasonable and necessary fees incurred for his attorneys, and the reasonable and necessary expenses incurred in the pursuit of this claim at the trial level, the Court of Appeals level, if the case is appealed to that Court, and in the Supreme Court of the United States, if necessary.

**X. PRE-AND POST- JUDGMENT INTEREST**

101.    Plaintiff requests pre- and post-judgment interest in the maximum amount allowed by law.

## XI.    JURY DEMAND

102.    Plaintiff respectfully demands a trial by jury.

## XII.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays the Court, upon final trial of this cause, grant judgment in favor of the Plaintiff and against Defendants for:

a.    Actual and compensatory damages as determined at a trial on the merits;

b.    Damages to income potential as a Chemical Engineer with active corporate career.

c.    Intentional infliction of pain and mental anguish damages;

d.    Punitive damages in an amount to punish and/or deter, and to make an example of Defendants, in order to prevent similar future conduct;

e.    Costs of court;

f.    Reasonable and necessary Attorney's fees;

g.    Reasonable and necessary expert fees;

h.    Pre-judgment and post-judgment interest at the maximum rate allowed by law;

i.    Such other and further relief, general or special, at law or in equity, to which

j.    Plaintiff may be justly entitled.

Respectfully Submitted,

Oluwaseyi D. Kayode

19518 Yucca Valley Ln.

Cypress, Texas 77433-7520

seyikayode@gmail.com

Telephone: 8323778008

*Pro Se Plaintiff*

25

Exhibit 1: Eviction Lawsuit with Harris County Justice of Peace. Complaint on 02/28 document the shoving of Plaintiff by Ms. Achi. Ms. Anchi is the first and ONLY tenant ever evicted by Plaintiff.



Exhibit # 2: Motion to dismiss and Judge order dismissing suit following lack of probable cause .

Filed 22 March 16 P12:23
Marilyn Burgess - District Clerk
Harris County

**CAUSE NO. 239728301010**

| THE STATE OF TEXAS | § | IN THE COUNTY CRIMINAL |
| VS. | § | COURT AT LAW NO. 15 |
| KAYODE, OLUWASEYI | § | HARRIS COUNTY, TEXAS |

OFFENSE: FALSE REPORT TO POLICE OFFICER

**MOTION TO DISMISS**

The State respectfully requests the Court to dismiss the above entitled and numbered criminal action for the following reason(s):

☐ Case refiled as Cause No. .
☐ Defendant was convicted in another case: Cause No. .
☐ Missing witness.
☐ Request of complaining witness.
☐ Dispositive motion granted.
☐ Probable cause exists, but case cannot be proven beyond a reasonable doubt at this time.
☐ In custody elsewhere – will not be extradited to Harris County.
☐ Due to passage of time, defendant not likely be located or, if arrested, successfully prosecuted.
☐ No probable cause exists at this time to believe the defendant committed the offense.
☒ Court found no probable cause.
☐ Defendant successfully completed___, a diversion program.
☐ State intends to use as punishment evidence in cause no.
☐ Pursuant to Texas Penal Code § 12.45(a), Defendant admitted guilt to this offense during sentencing in Cause No. and requested the court to take admission of guilt into account in determining sentence.
☐ Primary offender(s) convicted – insufficient evidence of this defendant's involvement as party to offense.
☐ Other (explanation required)

EXPLANATION:

WHEREFORE, PREMISES CONSIDERED, it is requested that the above entitled and numbered cause be dismissed.

Respectfully submitted,

ROSANE, TRUITT
Assistant District Attorney
Harris County District Attorney's Office
TBC No. 24090852
ROSANE_TRUITT@DAO.HCTX.NET

**ORDER AND NOTICE**

The foregoing motion having been presented to me on March 16, 2022, and the same having been considered, it is, therefore, ORDERED, ADJUDGED and DECREED that the above-styled and numbered cause is hereby dismissed.

NOTICE:

SIGNED AND ENTERED on March 16, 2022.

Judge Presiding
Harris County Criminal Court At Law No. 15
Harris County, Texas

Exhibit # 3: Event report regarding false accusation by Ms. Anchi regarding trash on her vehicle. Similar report for event leading to plaintiff arrest was never released by HC Constable Precinct 5 .

## HCC5

### Event Report

| Event ID: 2022-0513879 | Call Ref #: 680 | | Date/Time Received: 02/16/22 08:36:47 |
|---|---|---|---|

| Rpt #: | Prime: 5U62 | Services Involved |
|---|---|---|
| Call Source: W911 | Unit: FLORES, MICHAEL AARON | LAW |

| Location: | | ALT: 0 DIST: 6.5 ft | |
|---|---|---|---|
| X-ST | DRYWOOD LN | Jur: CAD   Service: LAW | Agency: HCC5 |
| | ASHLEY TERRACE LN | St/Beat: 5055   District: D | RA: |
| Business: | | Phone: | GP: 5455 |

| Nature: MEET THE CITIZEN | Alarm Lvl:   1   Priority: 3 | Medical Priority: |
|---|---|---|

| Reclassified Nature: |
|---|

| Caller: TABITHA | | | Alarm: |
|---|---|---|---|
| Addr: | | Phone: (202) 491-5577 | Alarm Type: |

| Vehicle #: | St: | Report Only:   No | Race: | Sex: | Age: |
|---|---|---|---|---|---|

| Call Taker: CKINTZ | | Console: PSHP0036 | |
|---|---|---|---|

| Geo-Verified Addr.:   Yes   Nature Summary Code: | Disposition:  ADV | Close Comments: |
|---|---|---|

Notes: trash can was brought out with  other loose bags in front of reps vehicle that is parked on the curb in front of the house.... where the trash is usually picked up...no trash on rep's vehicle, only in front on the curb. [02/16/22 09:01:01 Unit:5U62] CREPT AT LOC. POSS GROUPHOME , SAYS SHE STAYS WITH A LOT OF DIFF PEOPLE AT LOC, ONE OF THE MLS TOOK TRASH AND PUT IT ALL OVER HERE CAR. WANTS A REPORT/ NEGATIVE TO COVID9 QUESTIONS. ML SUSP IS NOT AT LOC AT THIS TIME  [02/16/22 08:39:35 CKINTZ]

### Times

| Call Received: 02/16/22 08:36:47 | Time From Call Received | | |
|---|---|---|---|
| Call Routed: 02/16/22 08:39:38 | 000:02:51 | Unit Reaction: | 000:03:08  (1st Dispatch to 1st Arrive) |
| Call Take Finished: 02/16/22 08:39:41 | 000:02:54 | En-Route: | (1st Dispatch to 1st En-Route) |
| 1st Dispatch: 02/16/22 08:41:32 | 000:04:45   (Time Held) | On-Scene: | 000:16:41  (1st Arrive to Last Clear) |
| 1st En-Route: 02/16/22 08:41:32 | 000:04:45 | | |
| 1st Arrive: 02/16/22 08:44:40 | 000:07:53   (Reaction Time) | | |
| Last Clear: 02/16/22 09:01:21 | 000:24:34 | | |

### Radio Log

| Unit | Empl ID | Type | Description | Time Stamp | Comments (may truncate in portrait) | Close Code | User |
|---|---|---|---|---|---|---|---|
| 5U62 | C50674 | D | Dispatched | 02/16/22 08:41:32 | | | VICTORIA.HI |
| 5U62 | C50674 | E | En-Route | 02/16/22 08:41:32 | | | VICTORIA.HI |
| 5U42 | C50719 | D | Dispatched | 02/16/22 08:41:55 | Out Evt: [A] at 20902 TORTOISE SHELL | | DIEGO.LOU |
| 5U42 | C50719 | E | En-Route | 02/16/22 08:41:55 | Out Evt: [A] at 20902 TORTOISE SHELL | | DIEGO.LOU |
| 5U62 | C50674 | A | Arrived | 02/16/22 08:44:40 | | | Unit:5U62 |
| 5U42 | C50719 | A | Arrived | 02/16/22 09:01:11 | | | Unit:5U42 |
| 5U62 | C50674 | C | Cleared | 02/16/22 09:01:20 | [ADV] | ADV | MICHAEL.FL |
| 5U42 | C50719 | C | Cleared | 02/16/22 09:01:21 | [CBU] | CBU | DIEGO.LOU |

Report Generated: 03/08/2022 14:57:21 | User ID: TKARLINER          Note: Comments may truncate in portrait. Use landscape to avoid truncation

EventHistory_Event_Portrait          Page 1 of 2

**Exhibit # 4: Texas Attorney General decision advising report of arrest incident not to be released to Plaintiff.**



**KEN PAXTON**
ATTORNEY GENERAL OF TEXAS

May 25, 2022

Ms. Sarah Hodges
Assistant County Attorney
Harris County
1019 Congress, 15th Floor
Houston, Texas 77002

OR2022-14991

Re: Request for 22PIA0378

Dear Ms. Hodges:

The Office of the Attorney General has received your request for a ruling and assigned your request ID# 949916.

After reviewing your arguments and the submitted information, we have determined your request does not present a novel or complex issue. Thus, we are addressing your claims in a memorandum opinion. You claim the submitted information may be withheld from the requestor pursuant to section 552.108(a)(2) of the Government Code. Upon review of your arguments and the submitted information, we conclude you may withhold the submitted information under section 552.108(a)(2). However, you must release the basic information pursuant to section 552.108(c) of the Government Code.

For more information on the cited exception, please refer to the open government information on our website at https://www.texasattorneygeneral.gov/open-government/governmental-bodies/open-records-memorandum-rulings. You may also contact our Open Government Hotline at 1-877-OPENTEX.

Enc. Submitted documents

c: Requestor
(w/o enclosures)

Exhibit # 5: Email regarding the request from Texas Attorney General

3/15/23, 3:31 PM                                    Gmail - PIA REQUEST

 **Gmail**                           Seyi Kayode <seyikayode@gmail.com>

## PIA REQUEST

**Balonwu, Amaka (CAO)** <Amaka.Balonwu@harriscountytx.gov>          Mon, Jun 6. 2022 at 9:50 AM
To: "seyikayode@gmail.com" <seyikayode@gmail.com>

Dear Oluwaseyi Kayode,

Please find attached, a copy of the Attorney General's ruling on your public information request. Thank you.



*Amaka Balonwu, J.D.*
Public Information Coordinator

E: Amaka.Balonwu@cao.hctx.net

P: 713-274-5352

C: 832-649-0319

**Office of the Harris County Attorney**

**Christian D. Menefee**

1019 Congress, 15th Floor

Houston, Texas 77002

cao.harriscountytx.gov

CONFIDENTIAL: ATTORNEY-CLIENT PRIVILEGED; ATTORNEY WORK PRODUCT: Emails and attachments received from the Office of the Harris County Attorney may be protected by the attorney-client privilege, as attorney work-product or by virtue of other privileges or provisions of law. If you are not an intended recipient, please do not read, copy, use, forward, or disclose any such communications or attachments to others; immediately notify the sender by reply email; and delete the email and the reply from your system. Any unauthorized disclosure, copying, distribution, or use of emails from us or any attachments thereto is prohibited.

**From:** Balonwu, Amaka (CAO)
**Sent:** Friday, March 25, 2022 11:51 AM
**To:** seyikayode@gmail.com
**Subject:** PIA REQUEST

**Dear** Oluwaseyi Kayode,

Your request for Public Information has been sent over to the Office of the Attorney General for an opinion. Please find attached a copy of the letter to the Attorney General's Office requesting for an opinion on the release of your request. Once we receive a ruling from the Attorney General's office, you will be notified. Thank you.

Exhibit # 6: Follow-up email for records of arrest to be released 90 days after initial request.

3/15/23, 3:32 PM                                    Gmail - PIA REQUEST

 **M** Gmail                              Seyi Kayode <seyikayode@gmail.com>

## PIA REQUEST

**Seyi Kayode** <seyikayode@gmail.com>                    Sun, Jun 5, 2022 at 7:44 PM
To: "Balonwu, Amaka (CAO)" <Amaka.Balonwu@cao.hctx.net>

Hello,
It's now been several months since I requested for release of the facts of finding in my illegal arrest and detention. Can you please provide
feedback on why I still haven't gotten any response? I recall you stated I should expect an opinion in 30 days. It is now 90 days since that
request and it's already over 90 days since I was handcuffed and dumped into Harris county jail. Please help.
Thanks

Mr. Kayode

On Fri, Mar 25, 2022 at 11:51 AM Balonwu, Amaka (CAO) <Amaka.Balonwu@cao.hctx.net> wrote:

Dear Oluwaseyi Kayode,


Your request for Public Information has been sent over to the Office of the Attorney General for an opinion. Please find attached a copy of
the letter to the Attorney General's Office requesting for an opinion on the release of your request. Once we receive a ruling from the
Attorney General's office, you will be notified. Thank you.



**Amaka Balonwu, J.D.**
Public Information Coordinator

E: Amaka.Balonwu@cao.hctx.net

P: 713-274-5352

C: 832-649-0319


**Office of the Harris County Attorney**

**Christian D. Menefee**

1019 Congress, 15th Floor

Houston, Texas 77002

cao.harriscountytx.gov


CONFIDENTIAL: ATTORNEY-CLIENT PRIVILEGED; ATTORNEY WORK PRODUCT: Emails and attachments received from the Office
of the Harris County Attorney may be protected by the attorney-client privilege, as attorney work-product or by virtue of other privileges or
provisions of law. If you are not an intended recipient, please do not read, copy, use, forward, or disclose any such communications or
attachments to others; immediately notify the sender by reply email; and delete the email and the reply from your system. Any
unauthorized disclosure, copying, distribution, or use of emails from us or any attachments thereto is prohibited.

Exhibit # 7: Affidavit with charges initiating the malicious prosecution by Harris County District Attorney's office.

Filed 22 March 03 A12:56
Marilyn Burgess - District Clerk
Harris County
EA001_1171583
By: BERNAL, JESSICA M

THE STATE OF TEXAS
VS.
OLUWASEYI KAYODE
19518 YUCCA VALLEY LN
CYPRESS TX 77433

SPN: 03133021
DOB: B M
DATE PREPARED: 03/03/2022

D.A. LOG NUMBER: 2817809
CJIS TRACKING NO.: 9269479129A001
AGENCY:CD5
O/R NO: 220300054
ARREST DATE: 03/02/2022 12:04PM

NCIC CODE: 4803 01          RELATED CASES:

MISDEMEANOR CHARGE: False Report to Peace Officer, Investigator, or Employee

CAUSE NO: 239728301010
HARRIS COUNTY CRIMINAL COURT AT LAW NO: 15
FIRST SETTING DATE: 3/10/2022

COURT ORDERED BAIL: NCR9
PRIOR CAUSE NO:
CHARGE SEQ NUM: 1

**IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:**

Before me, the undersigned Assistant District Attorney of Harris County, Texas, this day appeared the undersigned affiant, who under oath says that he has good reason to believe and does believe that in Harris County, Texas, OLUWASEYI KAYODE, hereafter styled the Defendant, heretofore on or about March 2, 2022, did then and there unlawfully, with intent to deceive, and knowingly make a false statement, namely, the Defendant said that he had been assaulted, to C. Reyes, a peace officer with the Harris County Constable Precinct 5, who was conducting an investigation into an assault of the Defendant, and the Defendant's statement was material to that investigation.

**AGAINST THE PEACE AND DIGNITY OF THE STATE.**

Signed and sworn by me on 03/03/2022

Paula Donier

Paula Bomer
AFFIANT

Duly attested by me on 03/03/2022

Ruth Y. Burton

Yvonne Burton
Assistant District Attorney
Harris County District Attorney's Office
TBC No. 03479320
BURTON_YVONNE@DAO.HCTX.NET

Probable Cause found _____ Capias to issue _____
                                                   Magistrate, Harris County, Texas

**COMPLAINT**

D.A. LOG NUMBER: 2817809
DEFENDANT: OLUWASEYI KAYODE          Page 1 of 1

32

Exhibit # 8: Email from Corwin Bradley April 20, 2022 declaring that the internal investigation showed officers followed all Harris County Constable Precincts 5 policy and training regarding arrest of Plaintiff.

 Gmail

Seyi Kayode <seyikayode@gmail.com>

### **Complaint Against Constable Officers**

CSIAD (Constable Pct. 5) <C5IAD@cn5.hctx.net>
To: Seyi Kayode <seyikayode@gmail.com>

Wed, Apr 20, 2022 at 9:27 AM

Mr. Kayode,

We are not at liberty to discuss any of the questions you have asked regarding your court case.

As for your concern if officer's followed procedures and training, we reviewed, the officer's body camera footage and did not observe any violation of Harris County Constable Pct 5 policy's, procedures or training.

Thanks,

## **Corwin Bradley**

**Corporal, Internal Affairs/Recruiting**



**Harris County Constable's Office Pct. 5**

17423 Katy Freeway, Houston. TX 77094

832-927-6791 (Direct Office)

C5IAD@cn5.hctx.net



This e-mail and any attachments are confidential and may be protected by legal privilege. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this e-mail or any attachment is prohibited. If you have received this e-mail in error, please notify us immediately by returning it to the sender and delete this from your system. Thank you for your cooperation.

**From:** Seyi Kayode <seyikayode@gmail.com>
**Sent:** Wednesday, April 13, 2022 9:24 PM
**To:** C5IAD (Constable Pct. 5) <C5IAD@cn5.hctx.net>
**Subject:** Re: Complaint Against Constable Officers